IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AURELIO MONTANO, | |
| Plaintiff, | CASE NO. 21-CV-06867 |
| vs. | JUDGE ANDREA R. WOOD |
| WEXFORD HEALTH SOURCES, INC., LESLIE WILKING, and MARLENE HENZE, | |
| Defendants. | |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

### INTRODUCTION

Plaintiff Aurelio Montano is an inmate who was brutally attacked while working in the showers of Stateville Correctional Facility's Healthcare Unit. Although nearly five years have elapsed since the attack, to date, Mr. Montano has not received proper medical care to address his injuries. This inadequate care was caused by the policies and practices of Wexford Health Sources, Inc. ("Wexford"), and the deliberate indifference by Defendant Leslie Wilking, a Registered Nurse at Stateville, and Defendant Marlene Henze, MD, medical director of Stateville, (collectively, the "Individual Defendants"). As a result, Mr. Montano has experienced ongoing medical and psychological issues.

Mr. Montano's Third Amended Complaint ("TAC") alleges deliberate indifference against the Individual Defendants, and policies and practices employed by Wexford that caused a violation of Mr. Montano's constitutional rights, and directly relates to the conduct and occurrences originally set forth in Mr. Montano's *pro se* complaint. Defendants moved to dismiss the complaint ("Motion"). Dkt. 122. Defendants' motion should be denied.

1

## **BACKGROUND**

Mr. Montano is currently incarcerated in the Illinois Department of Corrections ("IDOC"). TAC, Dkt. 116, ¶ 2. In June of 2020, Mr. Montano was housed at Stateville Correctional Center ("Stateville"), assigned to work in Stateville's Health Care Unit ("HCU"), under the supervision of IDOC and Wexford while working. *Id.*

On June 11, 2020, Mr. Montano was working, cleaning an area near the HCU's showers. *Id.* at ¶ 3. While Mr. Montano was working, one of the guards opened the shower door for inmate Corey Young in retaliation against Montano for filing a previous lawsuit against Wexford. *Id.* at ¶¶ 6-7. Young violently attacked Mr. Montano. *Id.* at ¶ 5. None of the guards used pepper spray to diffuse the situation, or properly restrained Young. *Id.* at ¶ 6. During the attack, one of the guards told Mr. Montano, "I hope you learned what happens when you file lawsuits at Stateville." *Id.* Mr. Montano suffered bruises, blood cuts, and hemorrhaging as a result of the attack. *Id.* at ¶ 7.

In the months and years that followed, Wexford failed to provide Mr. Montano with the medical care he needed to address his injuries. Wexford ignored Mr. Montano's sick call requests and delayed evaluating him. *Id.* at ¶ 10. Defendant Wilking told Mr. Montano, "Maybe this will teach you not to file lawsuits against those you need medical help [from]." *Id.* Defendant Henze, Wexford's Medical Director, then delayed providing him the treatments that were recommended by his doctors, including medication, physical therapy, and ultimately, surgery. *Id.* at ¶¶ 45, 52, 53. To this day, Mr. Montano has not yet received the surgery he needs. *Id.* at ¶ 52. As a result of Wexford's lack of care over the past five years, Mr. Montano's medical condition has worsened. *Id.* at ¶ 53.

**LEGAL STANDARD**

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court "construe[s] the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor." *Jackson v. Blitt & Gaines, P.C.*, 833 F.3d 860, 862 (7th Cir. 2016) (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)). To survive a motion to dismiss, a complaint must merely "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "'[D]etailed factual allegations' are not required." *Id.* (quoting *Twombly*, 550 U.S. at 555). In other words, "[t]he bar to survive a motion to dismiss is not high," and "[a] well-pleaded complaint may proceed even if it strikes a savvy judge [that] 'recovery is very remote and unlikely.'" *Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 881 (7th Cir. 2022) (quoting *Twombly*, 550 U.S. at 556).

**ARGUMENT**

**A. Mr. Montano Has Always Alleged that Defendants Acted With Deliberate Indifference to His Serious Medical Needs Following the July 11, 2020 Attack.**

Since the inception of this case, Mr. Montano's core allegations and legal claims against Defendants have not changed: Defendants acted with deliberate indifference to Mr. Montano's medical needs by failing to provide timely and adequate medical treatment after the June 11, 2020 attack. As a result of Defendants' failure to provide timely and adequate medical treatment, Mr. Montano's cervical degenerative disk disease ("Cervical DDD"), which was caused by the attack, went undiagnosed and untreated for over three years. Dkt. 116, ¶ 1. He also continues to suffer from chronic neck and back pain as a result of the attack. *Id*. at ¶ 14. Critically, the allegations

3

relating to Mr. Montano's Cervical DDD and chronic pain are not "new claims." As set forth in Mr. Montano's TAC, Mr. Montano's Cervical DDD and chronic pain are a direct result of the Defendants' failure to provide timely and adequate medical treatment after the attack.

Mr. Montano filed this lawsuit, *pro se*, after he was violently attacked in the IDOC's custody and did not receive adequate treatment. In his *pro se* complaint, Mr. Montano brought a 42 U.S.C. § 1983 claim against Defendants Wexford, Wilking, and Henze relating to their delayed treatment following the June 11, 2020 attack. Dkt. 1 at 4-20. The *pro se* complaint included several substantive allegations that put Defendants on notice of Mr. Montano's claims against them, including "Dr. Henze did not see Plaintiff until June 17, 2020, which was six (6) days after Plaintiff returned from St. Joseph's hospital…" and "Defendant Wilking refused to honor Mr. Montano's sick call requests to address the pain suffered from the attack…" *Id*. at ¶ 28-29. The First Amended Complaint, drafted by previously appointed counsel, also included substantive allegations against Defendants relating to their failure to timely treat Mr. Montano and Mr. Montano's resulting pain. *See e.g.* Dkt. 22 at ¶ 16-19.[1] This case has always been, and continues to be, about Defendants' failure to timely treat Mr. Montano's injuries, which caused his conditions to go undiagnosed and untreated for over three years.

The TAC reflects additional information and details relating to Defendants' failure to provide timely and adequate medical treatment that were uncovered during discovery.[2] Courts routinely allow parties to amend their complaint after learning additional information relating to

---

[1] Plaintiff's Second Amended Complaint includes identical allegations. Dkt. 24 at ¶ 16-19.
[2] Defendants contend that Mr. Montano had "years to cure his defects and the benefit of discovery" (Motion at 21), yet this is not the case. Defendant Wexford Health Services did not appear until September 22, 2023. Dkt. 44. The Court stayed discovery on November 1, 2023. This stay remained in place until February 12, 2024. Dkt. 78. Defendants then flatly refused to participate in discovery, forcing Mr. Montano to file a motion to compel. Dkt. 96.

their claim. *See e.g., Luckett v. Conlan*, 561 F. Supp. 2d 970, 977 (N.D. Ill 2008); *Lippert Mktg., Ltd. v. Kingwood Ceramics, Inc.*, 1997 WL 527282, at *4 (N.D. Ill. Aug. 19, 1996); *Doe v. Bd. of Educ. Of Hononegah Cmty. High Sch. Dist. No. 207*, 833 F. Supp. 1366, 1379 (N.D. Ill. 1993). Despite Defendants' efforts to obstruct discovery at every turn, Mr. Montano's current counsel had the opportunity to review medical records, which have always been in Defendants' possession and include allegations relating to the exact injuries Mr. Montano suffered after the attack, how long it has taken Defendants to treat these injuries, and what treatment is still needed. Among other things, the TAC alleges:

- "Following the attack, Mr. Montano began to experience severe neck and back pain. Mr. Montano repeatedly reported this pain to Wexford. Wexford again ignored his sick call requests and refused to treat him." Dkt. 116 ¶ 12.

- "Wexford did not treat Mr. Montano until June 17, 2020, six days after his return. Upon information and belief, Wexford policy requires treatment within five days of return. During that visit, Mr. Montano reported neck and back pain. Wexford did nothing to treat this pain." *Id*. at ¶ 37.

- "Mr. Montano submitted several sick call requests regarding his neck and back pain. Mr. Montano submitted several sick call requests regarding his neck and back pain. These sick call requests went entirely unanswered by Wexford. Indeed, Wilking told Mr. Montano "maybe this will teach you not to file lawsuits against those you need medical help."" *Id*. at ¶ 40.

- "The University of Illinois diagnosed Mr. Montano with several conditions, including Cervical Degenerative Disc Disease ("Cervical DDD"). Upon information and belief, these injuries, including Mr. Montano's Cervical DDD, were caused by the attack and worsened by Wexford's failure to provide Mr. Montano medical care. Sudden trauma and injury can cause and accelerate Cervical DDD." *Id*. at ¶¶ 42, 43.

- "Mr. Montano did not receive physical therapy or the ordered medication upon his return to Stateville. As a result, Mr. Montano's pain and injury increased. Mr. Montano again submitted several sick calls that went unanswered. These delays severely exacerbated Mr. Montano's conditions." *Id*. at ¶ 47.

- "Mr. Montano continued to report his chronic neck and back pain to Wexford, yet his complaints still went unanswered. Wexford's continued delay in treating Mr. Montano exacerbated his pain. Wexford continually delayed seeing Mr. Montano, evaluating Mr. Montano, and ultimately referring him out for appropriate treatment." *Id*. at ¶ 48.

5

- "Mr. Montano's doctors ultimately concluded that surgery is necessary to treat his Cervical DDD. It has been five years since the attack, yet Mr. Montano has not received the required surgery." *Id*. at ¶ 52.

- "Beyond Wexford's failure to ensure that Mr. Montano receives the proper surgery, Wexford has also failed to provide the treatment necessary to treat his pain. Wexford's delay in providing treatment continues to exacerbate Mr. Montano's injuries." *Id*. at ¶ 52.

This Court granted Mr. Montano leave to file his TAC to include these allegations. Dkt. 117. As this Court noted during the May 2, 2025, conference, Mr. Montano's First and Second Amended Complaints, which were drafted by prior counsel, were alarmingly deficient of factual allegations and legal theory, both of which were present, to an extent, in the *pro se* complaint. *See Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008) (district court properly rejected argument that appointed counsel delayed in seeking leave to amend). The TAC properly encompasses the factual and legal allegations in this case, and Defendants fail to establish any prejudice that would result if Mr. Montano is permitted to proceed on his amended claims. *See Pietrzycki v. Heights Tower Service, Inc.*, 2015 WL 2265466, at * 1 (2015) ("[I]ncreased exposure to potential liability…is hardly the type of prejudice which can be considered undue") (collecting cases).

Despite this Court granting Mr. Montano leave to amend his complaint, Defendants now broadly claim that the TAC brings new claims that must be stricken or severed. Motion at 21. Defendants do not identify the substance of the allegedly "new" claims. Defendants also fail to cite any authority that requires this Court to strike or sever the "new" claims raised in the TAC. Indeed, the parties agree that "[p]laintiff can attempt to recover the damages for the various ongoing pain, suffering, and medical conditions that he can prove by appropriate expert evidence." *Id*. As set forth above, Mr. Montano's TAC squarely addresses Defendants' failure to provide timely and adequate medical treatment following the attack on June 11, 2020, which has always been the core allegation in this case.

In arguing that this court should sever or strike Mr. Montano's "new" claims, Defendants cite two inapposite cases, neither of which involve a motion to dismiss or otherwise assess "new" claims in an amended complaint: one pertains to joinder under the Prison Litigation Reform Act and the other reviews the district court's denial of a motion to remand. *See Dorsey v. Varga*, 55 F.4th 1094, 1107 (7th Cir. 2022) and *Santamarina v. Sears*, 466 F.3d 570, 573 (7th Cir. 2006). In *Dorsey*, the Seventh Circuit "offer[ed] a framework a district court might apply when faced with a joinder issue when screening a complaint under the PLRA." Joinder is not at issue here, as Defendants have not argued that they are impermissibly joined and, in any event, the inclusion of all Defendants is proper here. *See* Fed. R. Civ. P. 20 (permitting joinder of defendants when the relief sought arises out of the same transaction or occurrence and there is a common question of law or fact). In *Santamarina*, the Seventh Circuit affirmed the district court's denial of a motion to remand. *Santamarina*, 466 F.3d at 574. In doing so, the Court rejected Defendant's argument that an amended complaint was significantly different than the original complaint. *Id*. (noting that "the claim is essentially the same… and the same general facts are alleged.").[3] Both *Dorsey* and *Santamarina* did not address, let alone rule on, whether "new" claims must be stricken or severed following a motion to dismiss.

Defendants' primary concern seems to be the "new" allegations relating to Cervical DDD and chronic pain. Mr. Montano's pain and injuries are a direct product of Defendants' actions. Defendants do not dispute that Mr. Montano can recover for their alleged delay and failure to treat Mr. Montano on and following June 11, 2020. Motion at 21. As set forth in Mr. Montano's TAC, the attack caused Mr. Montano's Cervical DDD. Dkt. 116, ¶ 52. Defendants' failure to timely treat

---

[3] Putting aside the different procedural postures of *Santamarina* and this case, Mr. Montano's amended complaint is similar to the *Santamarina* complaint in so far as Mr. Montano's legal claims and general factual allegations have not changed.

Mr. Montano worsened his pain, causing the Cervical DDD to go undiagnosed and untreated for over three years. *Id*. at ¶¶ 1, 40-53, 59-64. To date, Mr. Montano still has not received adequate treatment for his Cervical DDD. *Id*. at ¶¶ 60-64. He also suffers from chronic neck and back pain. *Id*. at ¶ 53. Defendants cannot evade liability for the harm that they caused.

### B. Mr. Montano States a Claim Against Wexford.

Mr. Montano adequately stated a claim against Wexford under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Wexford can be subject to §1983 liability under *Monell*, "if the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1078 (N.D. Ill. 2018) (citing *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010)). At the pleading stage, the plaintiff need only allege facts that permit a reasonable inference of such a practice. *Savory v. Cannon*, 532 F.Supp.3d 628, 638 (2021). The Seventh Circuit has consistently held that Monell claims are not subject to a heightened pleading standard. *Ohlrich v. Village of Wonder Lake*, 22 F.Supp.3d 874, 878 (2014). Instead, they are evaluated under the usual Rule 8(a) requirements, which require a "short and plain statement of the claim showing that the pleader is entitled to relief." *Id*.

Here, Mr. Montano has gone above and beyond the fact pleading requirements, specifically alleging that Wexford has several widespread practices that caused the unconstitutional act complained of:

- "Wexford has adopted policies or procedures that, rather than ensure quality and timely care, instead result in reduced and delayed access to care and/or inadequate care." Dkt. 116, ¶ 54.

- "Wexford physicians are encouraged to spend minimal amounts of time with patients, lack the decision making authority to order medical tests and procedures, and/or have little incentive or ability to ensure that their patients'

8

- treatment needs are met once their cases have been referred to Wexford's Utilization Management team – especially with respect to patients' needs for those tests and procedures labeled "non-formulary" by Wexford." *Id*. at ¶ 55.

- "Wexford's contract with IDOC contains financial incentives that encourage Wexford to reduce outpatient referrals and hospitalizations of inmates in outside facilities. […] Wexford's treatment policies similarly encourage conservative care to cut costs, which causes their employees to withhold necessary medical care from inmates with serious medical conditions requiring outside care." *Id*. at ¶ 57.

The policies and practices identified by Mr. Montano in his TAC are more than sufficient to meet the requirement at the motion to dismiss stage—Mr. Montano is not required to identify a specific policy in his complaint. "The law is clear […] that Monell liability may be predicated not only on official or written policies but also on 'implicit polic[ies] or a gap in expressed policies,' or 'a series of violations [that confirm] the premise of deliberate indifference.'" *Cosby v. Rodriquez*, 711 F. Supp. 3d 983, 1012 (N.D. Ill. 2024) (quoting *Thomas v. Cook Cnty. Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010)). Wexford contends that Mr. Montano did not identify an express policy in the TAC. Motion at 15, 19. This argument fails for two reasons. First, Mr. Montano did not have a copy of Wexford's policies at the time he filed his TAC. In fact, throughout the course of discovery, Mr. Montano was forced to file a motion to compel, and it was not until this Court intervened that Wexford finally agreed to produce its policies to Mr. Montano. *See* Dkt. 96. Without possession of the policies, Mr. Montano could not be expected to expressly identify policies in his TAC. Second, as seen by the examples of policies and practices listed above, Mr. Montano is not alleging that there is one specific policy that caused the deprivation of his constitutional rights. *See* Dkt. 116 at ¶ 54-59. Instead, Mr. Montano is asserting that there is a practice or widespread custom that shows an implicit policy of delaying medical treatment and gaps in the policies that allow for delays in medical treatment.

9

Mr. Montano has also adequately alleged that the practice or custom at Wexford was the "moving force" behind the constitutional deprivation. Defendants' assertion to the contrary ignores critical allegations in the TAC. *See* Motion at 18. Mr. Montano specifically alleges that "the delays in referring Mr. Montano to an outside specialist and scheduling surgery for his Cervical DDD were motivated in part by the financial incentives of Wexford's policies and procedures requiring several stages of approval before an inmate can be approved for outside care." Dkt. 116, ¶ 58. The TAC also states, "Mr. Montano was not seen until July 13, 2020 due to Wexford's policy, custom, and practice of rotating inmates among site staff to diffuse liability and delay treatment." *Id*. at ¶ 40. These are just a few examples of how Mr. Montano directly tied the complained-of policies and practices to the violation of his constitutional rights.

Finally, Defendants argue that the conduct alleged by Mr. Montano does not demonstrate widespread practice or custom because he has not shown more than three incidents of misconduct. Motion at 20. Mr. Montano is not required to plead additional examples of misconduct in order to survive a motion to dismiss. "A plaintiff raising a *Monell* claim may rely solely on his own experience, rather than being required to plead examples of other individuals' experiences." *Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1079 (N.D. Ill. 2018); *see also White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016) (noting that plaintiff "was not required to identify every other or even one other individual who had been arrested pursuant to a warrant obtained through the complained-of process").

Mr. Montano has adequately alleged that on a repeated number of occasions, over the course of the last five years, his medical treatment has been improperly delayed more than a handful of times. *See* Dkt. 116, ¶¶ 37-53. This is sufficient to establish that there have been more than three examples of misconduct. Moreover, Mr. Montano alleges that in reports issued by a

10

team of experts in 2014 and 2018, there are policies at Wexford that have led to substantial delays in care and the absence of any follow-up with the patients. *Id*. at ¶ 56. The reports specifically found that Wexford's process for approving specialty care was a "patient safety hazard" that should be abandoned. *Id*. The inclusion of these allegations in the TAC shows that there were numerous incidents of misconduct, sufficient to satisfy the pleading requirements for a Monell claim. *Shields v. City of Chicago*, No. 17 C 6689, 2018 WL 1138553, at *4 (N.D. Ill. Mar. 2, 2018) (noting that Plaintiff stated *Monell* claim because "his own ... excessive force injury" was "sufficiently similar" to those he described in numerous reports on CPD, including the 2017 DOJ report).

Despite Defendants' arguments and the cherry-picked examples from the complaint about how Mr. Montano pled his Monell claim, the TAC contains specific examples of policies and practices employed by Wexford that led to the violation of Mr. Montano's constitutional rights. Mr. Montano is not required to plead more at this stage. Consequently, Defendants' motion to dismiss the Monell claim should be denied.

### C. Mr. Montano States a Claim Against the Individual Defendants.[4]

Mr. Montano pleads that Wilking and Dr. Henze were deliberately indifferent to his medical needs. Prison staff and medical providers violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical needs. *Resendez v. Wexford Health Sources, Inc.*, 3:20-CV-00496-SMY, 2021 WL 4262441, at *3 (S.D. Ill. Sept. 20, 2021). Deliberate indifference occurs where an official realizes that a substantial risk of harm to a prisoner exists, but facilitates, approves, condones, disregards, or "turn[s] a blind eye" to that risk. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir.1995).

---

[4] The Individual Defendants answered Mr. Montano's Second Amended Complaint, which contained substantially similar allegations to the TAC. Dkt. 212. Their answer admitted that Dr. Henze saw Mr. Montano upon his return from the hospital after the June 11 attack, and that the Individual Defendants worked at Stateville for Wexford at the relevant time. *Id*. at ¶ 1, 16.

11

As a threshold matter, Mr. Montano's injuries, which caused his Cervical DDD, were and are a serious medical need. Defendants do not contest this in their motion. Dkt. 123, p. 6. Notably, "[a] medical need is considered sufficiently serious if the inmate's condition has been diagnosed by a physician as mandating treatment". *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) quoting *Roe v. Elyea*, 631 F.3d 843, 957 (7th Cir.2011). Here, the University of Illinois recommended Cervical Epidural Steroid Injections for Mr. Montano's chronic neck and back pain related to Cervical DDD. Dkt. 116, ¶¶ 48, 50. Additionally, "chronic pain presents a[n] objectively serious condition." *Wilson v. Wexford Health Sources, Inc.*, 932 F.3d 513, 521 (7th Cir. 2019), quoting *Gonzalez v. Feinerman*, 663 F.3d 311, 314 (7th Cir. 2011). As described in the TAC, the Individual Defendants were aware of Mr. Montano's injury from the attack and his related chronic pain but delayed his care, constituting deliberate indifference.

    a. **Dr. Henze was deliberately indifferent to Mr. Montano because she knew of his injury and delayed his care on an ongoing basis.**

Defendants' motion to dismiss should be denied because it attempts to assert a higher standard of pleading than the plausibility standard set out in *Iqbal* and *Twombly*. Defendant Henze asserts that Mr. Montano did not provide sufficient detail about her personal involvement in Mr. Montano's constitutional deprivation. *Id.* at 9-10. But Dr. Henze cannot demand that Mr. Montano plead his claims with particularity by explicitly listing "the who, what, when, where, and how" of his claims. *Greenawalt v. Indiana Dep't of Corr.*, 2004 WL 828099 (S.D. Ind. Mar. 22, 2004), aff'd on other grounds, 397 F.3d 587 (7th Cir. 2005) (quoting *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999)). Mr. Montano is not alleging fraud and is "not require[d] to plead the particulars of his claim" in order to survive a motion to dismiss. *Hammes v. AAMCO Transmissions, Inc.*, 33 F.3d 774, 778 (7th Cir. 1994). The TAC sufficiently sets out the elements of a claim against Dr. Henze as follows. Mr. Montano alleges that Defendant Henze was the

medical director at Stateville from 2018 to around 2021. Dkt. 116, ¶ 17. During her time as medical director, she acted under the color of state law and was responsible for the actions of the medical staff she supervised and for Mr. Montano's medical care. *Id.* Dr. Henze treated or approved the treatment of Mr. Montano, including by referring him to specialists for care. *Id.* at ¶ 8. Dr. Henze's referral took months. *Id* at ¶ 41. Over five subsequent years, Mr. Montano's pain has not yet resolved, because neither Henze nor any Wexford medical provider has scheduled his necessary surgery. *Id.* at ¶¶ 41- 59. Mr. Montano alleges that Dr. Henze was following her employer, Wexford's, policies and practices of delaying referrals and utilizing conservative care to cut costs. *Id.* at ¶¶ 57-58. Thus, Mr. Montano alleges all elements of the claim sufficient to meet the operative pleading standard.

      Further, Defendant Henze moves to dismiss on the basis that her medical judgment deserves deference. Dkt. 123 at 6, 10 ("each allegation of her involvement show [sic] that she used medical judgment when Plaintiff presented to her"). But Mr. Montano alleges that Dr. Henze was following policies and practices of delaying referrals and utilizing conservative care to cut costs. *Id.* at ¶¶ 57-58. This is a clear allegation that decisions to delay referral and surgery are not based on legitimate medical judgment. Where a prison official delays a prisoner's treatment for non-medical reasons, thereby exacerbating his pain and suffering, she commits deliberate indifference. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir 2009) (allowing claim to advance that alleged "implicitly that [inmate's delayed] treatment ... was not based on a legitimate medical judgment"); *McGowan v. Hulick,* 612 F.3d 636, 641 (7th Cir. 2010) (allowing claim to advance because "allegations suffice to put [the medical provider] on notice of what he is accused of doing wrong:" delaying approval for the prisoner to see specialists, which caused unnecessary pain and deterioration in condition). Defendants essentially claim that following a practice of

13

conservative care and delayed referrals is within the medical judgment of Dr. Henze. But this is a complicated question of fact, not to be determined on the pleadings. Thus, Defendants' motion should be denied as to Dr. Henze.

### b. Wilking was deliberately indifferent because Mr. Montano made her aware of his deprivation through sick calls and she condoned the deprivation.

Mr. Montano submitted many sick call requests for treatments, which Nurse Wilking deliberately ignored, constituting deliberate indifference. "[A] prison official's knowledge of prison conditions learned from an inmate's communications can, under some circumstances, constitute sufficient knowledge of the conditions to require the officer to exercise his or her authority and to take the needed action to investigate and, if necessary, to rectify the offending condition." *Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015), quoting *Vance v. Peters*, 97 F.3d 987, 992-93 (7th Cir. 1996). In this way, an inmate's communications to a prison official may establish a basis for personal liability under § 1983 where that correspondence provides sufficient knowledge of a constitutional deprivation. *Id*.

Even when the prison employee is not directly responsible for the constitutional deprivation, knowledge of the deprivation combined with disregard of it constitutes deliberate indifference. *Gentry* bears this out. There, an inmate alleged abrogation of his right of access to the courts because he was denied scribe materials by guards. *Gentry*, 65 F.3d at 557. The inmate wrote letters to the prison superintendent about this allegation; the superintendent did not answer any of the letters. *Id.* at 561. While the guards, not the superintendent, were directly responsible for the inmate's constitutional deprivation, the court found that the superintendent knew of the deprivation and ignored it, sufficient for the inmate's claim to survive summary judgment. *Id.*

Here, Mr. Montano has made Defendant Wilking aware of his constitutional deprivation through written communications, and she abided by it. The TAC clearly alleges that Mr. Montano

14

made several sick call requests for treatment. Dkt. 116, ¶¶ 10, 39. "Sick call requests" are communications that an inmate may "submit." *Id*. In relationship to these unanswered sick call requests, Nurse Wilking told Mr. Montano, "maybe this will teach you not to file lawsuits against those you need medical help [from]." *Id*. Even if Nurse Wilking was not directly responsible for Mr. Montano's delayed and insufficient medical treatment, she was made aware of it through sick call requests and condoned it outright. *Id*. Mr. Montano was communicating to prison care officials his need for medical treatment through numerous sick call requests. *Id.* Nurse Wilking, in response, approved of the insufficient medical treatment by telling Mr. Montano that his poor medical treatment is *a lesson he deserves*—a step beyond the inaction of the superintendent in *Gentry*. Wilking not only ignored Mr. Montano's sick calls but stated her approval of the poor treatment he was receiving. *Id.* Here, Wilking's cosign of Mr. Montano's constitutional deprivation evinces her deliberate indifference.

## **CONCLUSION**

For the reasons stated herein, Mr. Montano respectfully requests that this Court deny Defendants' Motion to Dismiss.

**Date:** July 17, 2025

AURELIO MONTANO,

By   <u>/s/ J. Erik Connolly</u>
    One of His Attorneys

J. Erik Connolly
Ron Betman
Olivia Sullivan
Meghan Golden
Jane Moye-Rowley
BENESCH, FRIEDLANDER,
COPLAN & ARONOFF
71 S Wacker Dr, Suite 1600
Chicago, IL 60606
(312) 212-4949
econnolly@beneschlaw.com
rbetman@beneschlaw.com
osullivan@beneschlaw.com
mgolden@beneschlaw.com
jmoye-rowley@beneschlaw.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on July 17, 2025, I will electronically file the foregoing with the Clerk of the Court for the United States District Court for the Northern District of Illinois by using the CM/ECF system.

*/s/ J. Erik Connolly*
J. Erik Connolly